**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Mann Design Ltd.,
a Minnesota Corporation,

Civil File No. 01-1061 (MJD/FLN)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Farnam Companies, Inc.,
An Arizona Corporation,

Defendant.

Christopher J. Sorenson, Emmett J. McMahon, Robins, Kaplan, Miller & Ciresi L.L.P. for and on behalf of Plaintiff.

Kurt J. Niederluecke, Karna A. Berg, Lori J. Marco, Briggs & Morgan, P.A. for and on behalf of Defendant.

## I. INTRODUCTION

This matter is before the Court on the parties' Cross-Motions for Summary Judgment with respect to U.S. Patent No. D413,697 ("'697 Patent"). Plaintiff Mann Design, Ltd. ("Mann") seeks judgment as a matter of law that a line of dog toys it manufactures, known as the "Tennis Tail" product line, does not infringe the '697 Patent, or, in the alternative, that the '697 Patent is invalid due to a lack of novelty. Defendant Farnam Companies, Inc. ("Farnam") seeks judgment as a matter of law that the '697 Patent is valid and enforceable.

FILED 3-20-03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD 3-20-03
DEPUTY CLERK

## II. BACKGROUND

On June 17, 1996, Philip Druhan ("Druhan"), the inventor of the '697 Patent, filed an invention disclosure document with the United States Patent Office ("Patent Office"). Druhan filed the application for the design patent on April 10, 1998, and the patent issued on September 7, 1999. On June 1, 2001, Farnam acquired an exclusive license to manufacture and sell dog toys under the '697 Patent. On November 19, 2001, Farnam acquired all rights, title and interest in the '697 Patent, including the right to sue for past infringement.

### A. The Critter Line

The '697 Patent claims an "ornamental design for a dog toy, as shown and described" in nine drawings. The drawings present four different embodiments of the claimed design. Embodiment A is depicted in Figures 1-4, which show, respectively, perspective, side elevation, top, and bottom views of the dog toy. A fiber-covered "tail" is attached to a substantially spherical fiber-covered "head." The front region of the "head" has shorter fibers than the rest of the toy. Regardless of length, the fibers in each embodiment appear to be imitation animal fur.

Embodiment B is depicted in Figure 5 and differs from Embodiment A in the placement of the "tail." In Embodiment A, the "tail" is attached at the bottom of the "head." In Embodiment B the "tail" is attached at the midpoint of the "head." Embodiment C is depicted in Figures 6-7 and differs from Embodiment A in that the fibers covering the "head" portion of the toy are uniformly of the same

length but of a shorter length than the fibers covering the "tail." Embodiment D is depicted in Figures 8-9 and differs from Embodiment A in that the fibers covering the entire toy are of the same length and they cover the toy in a different pattern.

Farnam markets and sells four products under its Critter Line of plush dog toys: the "Fox," "Squirrel," "Shaggy" and "Skunk." The "Fox," "Squirrel" and "Skunk" are generally represented by Embodiment C of the '697 Patent. The "Shaggy" toy is generally represented by Embodiment D.

### B. The Tennis Tail

In late 2000, Druhan became aware that Mann was marketing and selling a product line under the name "Tennis Tail" that he thought was remarkably similar to the design claimed in the '697 Patent. Mann's Tennis Tail line of dog toys consists of three iterations: the "Squirrel," the "Fox" and the "Raccoon." Each iteration is available in three sizes: "tiny," "medium" and "large." The basic design of the Tennis Tail line of toys is an imitation fur tail attached to what appears to be a tennis ball. The hollow ball is covered in felt fabric and has a white rubber seam, such as one would see on a tennis ball. The tail is fastened to the ball with a cord strung through two holes in the ball.

### C. Prior Art

The application for the '697 Patent disclosed a number of prior patents. Mann has presented three additional dog toys, one of which is patented, it believes are more material to the patentability of Druhan's design than anything disclosed in the patent application. The three toys marketed and sold by Air Creations, Inc.

("Air Creations"), are the "squirrel," "wiggles" and the "weasel." Both the "squirrel" and "wiggles" are plush toys which represent an entire animal to scale. Each has a separate head, body and tail. The "weasel" is described in U.S. Patent No. 5,934,968 ("'968 Patent") as "a furry tail having a face invisibly connected to [a] ball." The ball houses a motorized device, allowing it to move randomly across the floor. The attachment between the motorized and non-motorized portion of the toy is to be substantially invisible, so as to give the appearance of an animal pursuing a ball. The application for the "weasel" patent was filed on May 22, 1997, and was granted August 10, 1999.

Druhan provided deposition testimony that he became aware of Air Creation's "wiggles" and "squirrel" toys while his patent application was pending in 1998. He called Air Creations to see if they would be interested in manufacturing his design as well. The "wiggles" toy was first marketed in 1994, and the "squirrel" toy was first marketed in 1995. Druhan testified that he did not disclose the Air Creation's toys because he did not believe they looked like his invention.

**D. The Present Litigation**

On January 2, 2001, Druhan's counsel sent a letter to Mann requesting that it cease and desist from further sales of the Tennis Tail line or, alternatively, negotiate a non-exclusive license to continue its sales. Druhan was mistakenly identified in the letter as the owner of the patent. In fact, Druhan had assigned all rights in his invention to Critter, Inc. prior to the issuance of the '697 Patent.

On June 13, 2001, Mann filed suit against Druhan seeking a declaratory judgment that the '697 Patent was not infringed and in the alternative that it was invalid and unenforceable. On January 9, 2002, Mann amended its Complaint to add Farnam as a defendant, after Farnam provided evidence that it had acquired all rights, title and interest in the '697 Patent. Farnam counterclaimed for patent infringement. On February 11, 2002, Druhan was dismissed based on the parties' stipulation. Mann took Druhan's deposition on May 10, 2002, and based on his testimony, again amended its Complaint to add a claim of invalidity due to inequitable conduct related to the alleged nondisclosure of information by Druhan to the Patent Office.

Mann asserts that it is entitled to judgment as a matter of law that its Tennis Tail line of toys do not infringe the '697 Patent. In the alternative, if the Court accepts Farnam's broad construction of the '697 Patent, Mann contends that the '697 Patent is invalid for lack of novelty. Farnam responds that the '697 Patent, properly construed, is infringed by Mann's line of toys. In the alternative, Farnam argues that numerous questions of fact exist regarding the ultimate question of infringement, and Mann is not entitled to judgment as a matter of law. Mann replies that Farnam has misapplied the relevant law in its argument.

Farnam asserts, in its related cross-motion, that it is entitled to judgment as a matter of law that the '697 Patent is valid and enforceable, because it is novel and nonobvious, and Druhan did not engage in inequitable conduct. Mann responds that prior art anticipates the '697 Patent, and that there is a material issue

of fact as to whether Druhan intended to mislead the Patent Office by allegedly omitting relevant prior art.

## III. DISCUSSION

### A. Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Eagle Comtronics, Inc. v. Arrow Communication Labs, Inc., 305 F.3d 1303, 1312 (Fed. Cir. 2002). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. See Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc., 45 F.3d 1550, 1560 (Fed. Cir. 1995. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Crown Operations Intern., Ltd. V. Solutia Inc., 289 F.3d 1367, 1377 (Fed. Cir. 2002). The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; rather, the nonmoving party must identify evidence on which a jury could reasonably make a favorable finding. See Anderson, 477 U.S. at 252. The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. See Paragon Podiatry Labs, Inc. v. KLM Labs, Inc., 984 F.2d 1182, 1185 (Fed. Cir. 1993).

**B. Mann's Motion for Partial Summary Judgment**

**1. Claim Construction**

To determine whether a patent has been infringed the court must construe the patent claim. See OddzOn Products, Inc. v. Just Toys, Inc., 122 F.3d 1396, 1404-05 (Fed. Cir. 1997). The court construes the scope of a patent as a matter of law. See id. at 1405; Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995). The court must look at the appearance of the design as a whole and, in particular, the visual impression it creates, in order to determine patentability and infringement. See Contessa Food Products, Inc. v. Conagra, Inc., 282 F.3d 1370, 1375 (Fed. Cir. 2002). The court must first construe the patent claim and then compare the construed claim to the accused product. See id.

A patented design is defined by the drawings in the patent in their entirety. See Keystone Retaining Wall Sys., Inc. v. Westrock, Inc., 997 F.2d 1444, 1450 (Fed. Cir. 1993). A design patent requires no description, other than a reference to the drawing or drawings. See 37 C.F.R. § 1.153(a). By obtaining a design patent, an inventor limits the patent protection to the ornamental design of an item. See Keystone, 997 F.2d at 1450. The scope of a design patent is limited to what is shown in the application drawings. See Elmer & HTH v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed. Cir. 1995).

**a. The Parties' Differing Constructions**

Not surprisingly, the parties offer materially different constructions of the '697 Patent. Mann asserts that the proper construction of the '697 Patent consists

of an ornamental design for a dog toy comprising a tail portion attached seamlessly to a head portion covered entirely by fibers that imitate animal hair. Mann emphasizes that, in its construction, the "head" portion must be completely covered by fibers that resemble animal hair.

Farnam asserts that the proper construction of the '697 Patent consists of an ornamental design for a dog toy comprising an imitation fur "tail" portion in combination with and connected to a fabric-covered, substantially spherical "head" portion. Farnam contends that the fabric on the "head" portion may be comprised of short or long fibers, and may include two or more fiber lengths within the same design. Farnam emphasizes, in its construction, that the "head" portion is covered in fabric, not animal hair.

Farnam, citing to In re Rubinfield, 270 F.2d 391, 395 (C.C.P.A. 1959), cert. denied, 362 U.S. 903 (1960), also asserts that when a design patent presents multiple embodiments, the embodiments are construed together to represent a single inventive concept. As such, Farnam argues that the inventive concept represented by the '697 Patent is an imitation fur tail with a substantially spherical, fabric-covered head, the texture of which may vary.

Rubinfield does not stand for the proposition that multiple embodiments disclosed in a design patent are construed together to represent a single inventive concept. In Rubinfield, the Court of Customs and Patent Appeals considered whether it was permissible to disclose multiple embodiments in a design patent application, or whether such an application should be dismissed on the basis of

double patenting. Id. The Court concluded "that it cannot be stated as an invariable rule that a design application cannot disclose more than one embodiment of the design." Id. The Court went on to state that whether such a disclosure is improper depends on the circumstances presented. See id.

Seven years later, the Court addressed the issue of whether multiple embodiments are construed as a broader concept, stating that the "[i]nclusion of more than one embodiment in a design claim does not mean the applicant is attempting to claim a concept; it is merely a claim covering several appearances." In re Frederic Marti, 359 F.2d 900, 903 (C.C.P.A. 1966). It is clear to this Court that no matter how many embodiments are shown, the patent is still limited to what is shown in the drawings, and in this case every drawing shows a "head" and "tail" entirely covered in simulated animal hair. Thus, the proper construction of the '697 Patent consists of an ornamental design for a dog toy comprising a tail portion attached seamlessly to a head portion covered entirely by fibers that imitate animal hair.

**b. Comparison of the '697 Patent and the Tennis Tail**

In comparing the construed claim to the accused products, two tests must be satisfied in order to find infringement: 1) the "ordinary observer" test; and 2) the "point of novelty" test. See Contessa, 282 F.3d at 1376.

**i. Ordinary Observer Test**

The "ordinary observer" test requires the court to inquire whether an "ordinary observer, giving such attention as a purchaser usually gives," would find

that the designs are essentially the same and that the resemblance is such that the purchaser would buy one supposing it to be the other. See Oddzon, 122 F.3d at 1405 (quoting Gorham v. White, 81 U.S. 511, 528 (1871)).

Mann argues that no "ordinary observer" could mistakenly confuse the patented and accused products for each other. Mann points out that while the '697 Patent encompasses a design with a "head" entirely covered in fake animal hair, the Tennis Tail toys feature what looks like a tennis ball attached by a black cord to an imitation animal tail. Mann emphasizes that in the '697 Patent, the "tail" is attached seamlessly to the "head." Mann also points to the matted felt fabric and the white rubber seam on the Tennis Tail ball, as distinguishing characteristics.

Farnam, citing to Read Corp. v. Portec, Inc., 970 F.2d 816, 825 (Fed. Cir. 1992), responds that only ornamental features may be considered in comparing the patented and accused designs. Farnam asserts that both the white rubber seam and the black cord are functional components of the Tennis Tail toy, and therefore must be ignored in the infringement analysis. Farnam goes on to argue that, in considering only the ornamental aspects of the two designs, the Tennis Tail appropriates the protected features of the '697 Patent: a substantially spherical fabric-covered "head" attached to an imitation animal hair "tail."

Farnam's reliance on Read Corp. is misplaced. Read Corp. stands for the proposition that where a patented device has both ornamental and functional properties, only the ornamental properties of the *patented device* are compared to the accused device. See id. (emphasis added). Neither Read Corp., nor any other

case stands for the proposition that the eye of an ordinary observer must be blinded to the ornamental aspects of features that may serve some utilitarian function. To the contrary, "the ultimate question is not the functional or decorative aspect of each separate feature, but the overall appearance of the article[.]" L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1123 (Fed. Cir. 1993). "If the overall appearance of the designs are dissimilar, then there can be no infringement base on the similarity of specific features." ADC Telecomm., Inc. v. Panduit Corp., 200 F.Supp.2d 1022, 1023 (D.Minn. 2002).

Farnam would have the Court focus only on certain aspects of the accused product, which it has identified as ornamental. In essence, Farnam asks the Court to ignore the forest and focus on a few carefully selected trees. This is not the proper approach. See Gorham, 81 U.S. at 528. An ordinary dog toy purchaser viewing the products side by side could not purchase one thinking it to be the other. Farnam markets a dog toy comprising a tail portion attached seamlessly to a head portion covered entirely by fibers that imitate animal hair, whereas Mann markets a dog toy comprising what looks like a tennis ball attached by a black cord to an imitation animal tail. A visual comparison of the products reveals that the overall look of the two products is too dissimilar to support a finding of infringement. Compare Jack Schwartz Shoes, Inc. v. Skechers, U.S.A., Inc., 233 F.Supp.2d 512, 514 (S.D.N.Y. 2002) (finding infringement where visual comparison of shoes revealed an extremely similar overall look).

**ii. Point of Novelty Test**

Despite finding that no ordinary observer could mistakenly confuse the two products, the Court will address the "point of novelty" test. The "point of novelty" test "requires proof that the accused design appropriates the novelty which distinguishes the patented design from the prior art." Contessa, 282 F.3d at 1377. It is error to combine the "ordinary observer" test and the "point of novelty" test by "relying on the claimed overall design as the point of novelty. Id.

Mann contends that, in addition to failing the "ordinary observer" test, Farnam cannot meet the burdens of the "point of novelty" test. Mann asserts that the only possible point of novelty is the specific ornamental appearance of the "head" portion of the '697 Patent, which is completely covered with imitation animal hair. Mann goes on to argue that the ball portion of the Tennis Tail line of toys does not have anything even approximating animal hair and therefore does not appropriate the sole element of the '697 Patent that is distinguishable from the prior art.

Farnam responds, with the broad argument, that the point of novelty of the '697 Patent is that a substantially spherical "head" is attached to a "tail," a step beyond the prior art. Farnam asserts that all of the prior art put forward by Mann represents an entire animal. Farnam essentially argues that by removing the "body," and leaving only a stylized "head," Druhan took a significant step beyond the Air Creations toys.

As explained above, the Court has rejected Farnam's construction of the '697 Patent. The Court agrees with Mann, that the '697 Patent's point of novelty is the ornamental appearance of a substantially spherical "head," covered entirely with imitation animal fur. Because Mann's Tennis Tail line of dog toys does not feature such a head, but rather what appears to be a tennis ball, no reasonable jury could find that it appropriated the '697 Patent's point of novelty. As a matter of law, the Tennis Tail line of dog toys does not infringe the '697 Patent.

**2. Invalidity**

Mann argues that if the Court were to accept Farnam's construction of the '697 Patent, that it would be necessarily invalid because it would be so broad so as to be anticipated by the '968 Patent. As explained above, the Court has rejected Farnam's construction of the '697 Patent, and found that the Tennis Tail line of dog toys does not infringe the '697 Patent. In accordance with the Court's construction, and as explained in more detail below, the '697 Patent is valid and enforceable in light of the prior art.

**C. Farnam's Motion for Partial Summary Judgment**

**1. Validity**

A patent is presumed valid and enforceable. See 35 U.S.C. § 282; Roper Corp. v. Litton Systems, Inc., 757 F.2d 1266, 1270 (Fed. Cir. 1985). The presumption can be rebutted only with clear and convincing evidence. See Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1288 (Fed. Cir. 2002).

Farnam asserts that the '697 Patent is novel and nonobvious, because all of the toys Mann presents as prior art depict entire animals. Farnam notes that they all have heads, bodies and tails, and that certain embodiments also feature ears, legs and eyes. In contrast, Farnam asserts that the '697 Patent does not represent an animal, but rather represents a step forward with the concept that a plush dog toy does not need to be a scaled representation of an animal.

Mann responds that the '697 Patent lacks both ornamentality and novelty. Mann bases this assertion on the assumption that Farnam's broad construction of the '697 Patent is accepted. As explained above, this Court has rejected Farnam's broad construction of the '697 Patent, and instead accepted Mann's narrower construction. Because the '697 Patent was applied for and granted as a design patent it has almost no scope. See In re Mann, 861 F.2d 1581, 1582 (Fed. Cir. 1988). Consistent with the Court's construction above, the '697 Patent protects the ornamental appearance of a substantially spherical "head," covered entirely with imitation animal fur. The '697 Patent presents a substantially different design than the dog toys identified by Mann. As such, the Court finds that it is sufficiently novel and nonobvious from the viewpoint of a designer of ordinary skill of dog toys in light of the prior art. See L.A. Gear, 988 F.2d at 1124.

**2. Inequitable Conduct**

A party seeking a patent has an affirmative duty to disclose to the Patent Office all information known to that individual to be material to patentability, including prior art that maybe so similar as to make the new design unoriginal.

See 37 C.F.R. § 1.56(a); accord Molins PLC v. Textron, Inc. 48 F.3d 1172, 1178 (Fed. Cir. 1995) (stating that patent applicants have duty to prosecute applications in the PTO with candor, good faith, and honesty). Failure to disclose material information may result in that patent being declared unenforceable. See Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1070 (Fed. Cir. 1998).

"Inequitable conduct entails a two-step analysis: first, a determination of whether the withheld reference meets a threshold level of materiality and intent to mislead, and second, a weighing of the materiality and intent in light of all the circumstances to determine whether the applicant's conduct is so culpable that the patent should be unenforceable." GFI, Inc. v. Franklin Corp., 265 1268, 1273 (Fed. Cir. ). A finding of inequitable conduct in the prosecution of a patent requires evidence of a failure to disclose material information coupled with intent to deceive. See Purdue Pharma L.P. v. Boehringer Ingelheim GMBH, 237 F.3d 1359, 1366 (Fed. Cir. 2001). "Materiality and intent to deceive are distinct factual inquiries, and each must be shown by clear and convincing evidence." Life Technologies, Inc. v. Clontech Laboratories, Inc., 224 F.3d 1320, 1324 (Fed. Cir. 2000).

**a. Materiality**

Information is material if a reasonable examiner would be substantially likely to consider it important in deciding whether to allow an application to issue as a patent. See Akron Polymer Container Corp. v. Exxel Container, Inc., 148

F.3d 1380, 1382 (Fed. Cir. 1998). Prior art is material, for the purpose of determining the duty of disclosure by a design patent applicant, if it makes the design prima facie unpatentable or refutes the applicant's position that the design is patentable. See 37 C.F.C. § 1.56(b); E. Am. Trio Products, Inc. v. Tang Elec. Corp., 97 F.Supp.2d 395, 404 (S.D.N.Y. 2000).

Farnam contends that the prior art put forth by Mann was not material to the prosecution of the '697 Patent. Mann relies on Druhan's deposition testimony that he knew about Air Creation's "squirrel," yet did not disclose it to the Patent Office. Farnam asserts that neither the "squirrel," nor its furry tail, make the '697 Patent obvious. Farnam asserts that Mann has made no showing that the "squirrel" can be combined with the other prior art disclosed in the '697 Patent to arguably make Druhan's invention unpatentable.

The "squirrel," and the other dog toys identified by Mann, would constitute material information if it is information a reasonable examiner would be substantially likely to consider it important in deciding whether to allow an application to issue as a patent. See Akron Polymer, 148 F.3d at 1382. Considering the low threshold necessary to get a design patent, and the obvious differences between the identified dog toys and the '697 Patent, the Court concludes that a reasonable examiner would not be substantially likely to consider it important in coming to a decision about the patentability of the designs disclosed in the '697 Patent.

**b. Intent to Deceive**

Even though the Court has determined the identified dog toys not material, the Court will address Druhan's alleged intent to deceive. Assuming that the prior information is material, that materiality does not presume intent. See GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1274 (Fed. Cir. 2001). "It is not inequitable conduct to omit telling the patent examiner information that the applicant in good faith believes is not material to patentability." Allied Colloids, Inc. v. Am. Cyanamid Co., 64 F.3d 1570, 1578 (Fed.Cir.1995).

Farnam argues that no evidence has been presented that Druhan was aware of the prior art put forward by Mann prior to April 10, 1997. Farnam asserts that Mann's evidence shows only that Druhan found out about the "squirrel" toy after he applied for his patent, and that such evidence fails as a matter of law to show Druhan's knowledge of undisclosed prior art.

Mann responds that Druhan had an ongoing obligation to disclose such prior art to the Patent Office, citing to Fox Indus., Inc. v. Structural Pres. Sys., Inc., 922 F.2d 801, 803 (Fed. Cir. 1990) (stating that an applicant's duty of candor exists throughout patent's entire prosecution history). Mann emphasizes that the Air Creation toys were much more similar to the '697 Patent than anything disclosed as prior art in the patent application. Mann argues that a material fact issue exists as to Druhan's intent, and therefore judgment as a matter of law is inappropriate.

Druhan provided deposition testimony that he did not disclose the prior art identified by Mann, because it did not look like his invention. This accords with the Court's construction of the '697 Patent, and the determination that the prior art identified by Mann was not material. On the record before it, the Court concludes that no reasonable jury could find, by clear and convincing evidence, that Druhan intended to deceive the Patent Office. See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (holding no genuine issue of material fact where record taken as a whole could not lead rational trier of fact to find for nonmoving party).

**D. Conclusion**

Based on the relevant law and the facts in this case Mann's motion for partial summary judgment must be granted because none of the evidence, when viewed in a light most favorable to Farnam, would support a jury verdict that the Tennis Tail line of products infringe on the '697 Patent. No ordinary observer could mistake the two products, nor does the Tennis Tail appropriate the '697 Patent's point of novelty.

In accordance with the Court's construction of the '697 Patent, Farnam's motion for partial summary judgment must be granted because the '697 Patent is sufficiently novel and nonobvious in light of the prior art, and is therefore valid and enforceable. Farnam's motion for summary judgment on the issue of Druhan's alleged inequitable conduct is appropriate because the record before the

Court indicates the prior art identified by Mann was not material to the '697 Patent, and Druhan acted without intent to deceive the Patent Office.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment is **GRANTED**.
2. Defendant's Motion for Summary Judgment is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated: March 19, 2003

Michael J. Davis
Michael J. Davis
United States District Court Judge